UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CORALIA D. LOPEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-25-CV-232-OLG (HJB) |
| | § | |
| FRANK BISIGNANO, Commissioner | § | |
| of the Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Orlando L. Garcia, United States District Judge:**

This Report and Recommendation concerns Plaintiff's request for review of the administrative denial by the Commissioner of the Social Security Administration (the "Commissioner") of her application for Social Security Disability Insurance Benefits ("DIB") under Title II, pursuant to 42 U.S.C. § 405(g). This matter was automatically referred to the undersigned for findings and recommendations pursuant to an October 8, 2019, Divisional Standing Order. (*See* Text Entry dated May 6, 2024.)

After considering the parties' briefs (Docket Entries 10, 13, and 14), the transcript ("Tr.") of the proceedings below (Docket Entry 6), the applicable case law, the relevant statutory and regulatory provisions, and the entire record in this matter, I recommend that the Commissioner's decision be **AFFIRMED**.

## I.    Jurisdiction.

This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The undersigned is authorized to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1).

## II.    Background.

Plaintiff filed an application for DIB on September 29, 2021, alleging an onset of her disability on June 1, 2018. (*See* Tr. 14.) Her last insured date was December 31, 2023. (Tr. 16.) On that date, Plaintiff was 44 years old with a high school degree and two years of college education. (Tr. 24, 47–48.)

After the Commissioner denied her initial claim and her request for reconsideration, Plaintiff filed a written request for a hearing, which was held before Administrative Law Judge ("ALJ") Melinda Kirkpatrick on July 2, 2024. (*See* Tr. 31–57.) On July 11, 2024, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 14–26.) In her decision, the ALJ followed the five-step sequential evaluation process required under 20 C.F.R. § 404.1520(a). (Tr. 15–16.)

At step one of the evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 16.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine with radiculopathy, degenerative disc disease of the lumbar spine with radiculopathy, right medial nerve neuropathy and radiculopathy/mild right carpal tunnel syndrome, right shoulder impingement, bilateral plantar fasciitis, chronic migraine headaches, depression, and anxiety. (Tr. 16–17.) At step three, the ALJ found that Plaintiff had no "impairment or combination of impairments that meets or medically equals the severity of one of the impairments" listed in 20 C.F.R. § 404, Subpart P, App. 1 ("the Listings"). (Tr. 17–18.)

Before reaching step four in the analysis, the ALJ found that Plaintiff retained the residual functioning capacity ("RFC") to perform "light" work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with a number of the physical limitations:

- she could lift and carry up to 20 pounds occasionally but 10 pounds frequently;

- she was limited to standing and/or walking in combination for a total of 6 hours out of an 8-hour work day, and similarly to sitting for a total of 6 hours out of the day;

- she could not climb ladders, ropes and scaffolds, but could occasionally climb ramps and stairs;

- she could only occasionally stoop, kneel, crouch, and crawl;

- she should avoid exposure to unprotected heights and hazardous, moving machinery;

- she could frequently reach in front and laterally, but could reach overhead only occasionally;

- she could only occasionally use foot control operation; and

- she would need to avoid concentrated exposure to extreme heat, cold, noise, and vibration.

(Tr. 19–20.) The ALJ also identified mental limitations in the RFC, finding that Plaintiff could understand, remember, and carry out detailed but not complex instructions, and could attend and concentrate for extended periods of up to two hours. (Tr. 20.)

At step four, the ALJ found that Plaintiff had no past relevant work to consider for purposes of determining disability. (Tr. 24.) But at step five, based on her RFC findings and the testimony of a vocational expert ("VE"), the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, all classified as light, unskilled work (SVP-2): routing clerk, DOT 222.687-022, of which there are approximately 30,000 positions in the national

economy; usher, DOT 344.677-014, of which there are approximately 4,000 positions in the national economy; and sales attendant, DOT 299.677-010, of which there are approximately 40,000 positions in the national economy.  (Tr. 24–25.)  Based on those findings, the ALJ concluded that Plaintiff was not disabled.  (Tr. 25–26.)

Plaintiff sought review by the Appeals Council, which denied the request, finding "no reason under [its] rules to review the Administrative Law Judge's decision." (Tr. 1.)  The Appeals Council's denial made the ALJ's decision the final decision of the Commissioner.  (*See* Tr. 1–3.) The instant appeal followed.  (Docket Entry 1.)

## III.    Applicable Legal Standards.

### A.    *Standard of Review.*

In its review, the Court is limited to a determination of whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standard was applied. 42 U.S.C. § 405(g); *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  The Court weighs four elements of proof in determining whether substantial evidence supports the Commissioner's determination: (1) the objective medical facts; (2) the diagnoses and opinions of treating physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work experience.  *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Substantial evidence will be found lacking only when "there is a conspicuous absence of credible choices" or "no contrary medical evidence."  *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citation omitted).  The court may not substitute its judgment for that of the Commissioner.  *Newton*

4

*v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence and credibility assessments are for the Commissioner, not the Court, to resolve.  *Martinez*, 64 F.3d at 174.

While substantial deference is owed to the Commissioner's factual findings, the ALJ's legal conclusions, and any claims of procedural error, are reviewed *de novo*.  *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003); *Gutierrez v. Barnhart*, No. 04–11025, 2005 WL 1994289, at *4 (5th Cir. Aug. 19, 2005) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1382–83 (5th Cir. 1988)).  Even when an ALJ errs, the Court must further determine whether the error was harmless. Error will not warrant reversal unless a party's substantial rights have been affected, *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007), and procedural errors will "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir. 2011) (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

**B.     *Entitlement to Disability Benefits*.**

The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [12] months."  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled only if her physical or mental impairment or impairments are so severe that she is unable to do her previous work, and cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work is available in the immediate area where she lives, whether a specific job vacancy actually exists, or whether she would be hired if she applied for such work. *Id*. § 423(d)(2)(A).

C.      *Evaluation Process and Burden of Proof.*

SSA regulations require that disability claims be evaluated according to a five-step process. *See* 20 C.F.R. § 404.1520 (2012). At the first step, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. *Id*. § 404.1520(a)(4)(i). If so, then she is not disabled regardless of her medical conditions, age, education, or work experience. *Id*. § 404.1520(b). At the second step, the Commissioner determines whether the claimant's impairment is severe. *Id*. § 404.1520(a)(4)(ii). Absent a severe impairment, a claimant is not disabled. *Id*. § 404.1520(c). At the third step, the Commissioner compares the severe impairment with those in the Listings. *Id*. § 404.1520(a)(4)(iii); *see* 20 C.F.R. § 404 Subpart P, App'x 1. If the severe impairment meets or equals an impairment in the Listings, then the claimant is disabled. 20 C.F.R. § 404.1520(d); *see Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

If the severe impairment does not meet or equal an impairment in the Listings, then the Commissioner must determine the claimant's RFC and then proceed to the fourth step: reviewing the demands of her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is still able to perform her past work, then she is not disabled. *Id.* § 404.1520(f). Otherwise, the Commissioner must proceed to the fifth and final step: evaluating the claimant's ability—given her residual capacities, age, education, and work experience—to do other work. *Id*. § 404.1520(a)(4)(v). Only if she cannot perform any other work will the claimant be deemed disabled. *Id.*, § 404.1520(g).

The claimant bears the burden of proof during the first four steps of this process. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). But once the claimant has shown that she is unable to perform her past work, the burden shifts to the Commissioner to identify other substantial gainful employment available to the claimant that she is physically able to perform—and to maintain for a significant period of time—taking into account her exertional and non-exertional

limitations. *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002). If the Commissioner identifies such work, then the burden shifts back to the claimant to prove that she is unable to perform that work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989). A finding that a claimant is not disabled at any step in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## IV.    Analysis.

Plaintiff argues in her brief that remand is required for three reasons: (a) the ALJ's RFC finding was inconsistent with her identification of a severe mental impairment; (b) the ALJ failed to explain the basis for omitting mental limitations from the RFC that were based on persuasive medical opinion evidence; and (c) the ALJ erred in relying on her own judgment to assess the limiting effect of Plaintiff's right shoulder impairment. (Docket Entry 10, at 3.) Each of these arguments is addressed below.

### A. *Whether Remand Is Required Because the ALJ's RFC Determination Was Inconsistent with Her Finding of a Severe Mental Impairment.*

As noted above, the ALJ found that Plaintiff had the severe mental impairments of depression and anxiety. (Tr. 17.) As noted above, in determining whether these severe impairments required a finding of disability under the Listings in 20 C.F.R. § 404 Subpart P, App'x 1, the ALJ evaluated the four broad areas of mental functioning known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(E)(1)–(4), 12.04(B)(1)–(4), 12.06(B)(1)–(4); *see also* 20 C.F.R. § 404.1520a(c)(3) (2017); SSR 96-8p, 1996 WL 374184, at *4. For each area, the ALJ was required to rate the degree of limitation using a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). A finding of an "extreme" limitation in any one area,

or a "marked" limitation in any two or more areas, meets the paragraph B criteria and requires a finding of disability.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(F)(2).

At step three of her evaluation, the ALJ found that Plaintiff's depression and anxiety did not result in limitations severe enough to meet the Listings.  The ALJ determined that Plaintiff had no limitations in the functional area of understanding, remembering, and applying information; mild limitations in the functional areas of interacting with others and adapting and managing herself; and moderate limitations in concentrating, persisting, and maintaining pace.  (Tr. 18–19.) In making these determinations, the ALJ expressly cited and discussed the medical evidence in the record (*see* Tr. 18), and Plaintiff does not take direct issue with the ALJ's determinations.  Instead, she argues that the ALJ's findings were inconsistent with the RFC, and that this inconsistency rendered her conclusions at steps four and five invalid.  (Docket Entry 10, at 6.)

Plaintiff argues that the ALJ's RFC finding contained no limitations on the claimant's ability to perform basic work activities.  She acknowledges that the mental portion of the RFC limited her to carrying out detailed but not complex instructions, and to attending and concentrating for extended periods only up to two-hour intervals.  (Tr. 20.)  But Plaintiff argues that her severe mental impairments would limit her ability to perform even simple work, and contends that the ALJ made no accommodation in this regard in formulating the RFC.  (Docket Entry 10, at 6–7.)  In support of this argument, Plaintiff cites the regulations regarding non-severe impairments which suggest, by implication, that if a mental impairment is severe, it significantly limits mental ability to do "basic work activities," which are defined to include "[u]nderstanding, carrying out, and remembering simple instructions" and the use of judgment.  (Docket Entry 10, at 6 (citing 20 C.F.R. § 404.1522(b)(3) (2017).)

Arguments similar to Plaintiff's have repeatedly been rejected by courts in the Fifth Circuit, including recently by a magistrate judge in the Northern District of Texas in *Roberts v. Comm'r of Soc. Sec.*, No. 4:24-CV-930-BP, 2025 WL 1268116 (N.D. Tex. May 1, 2025). As in this case, the ALJ in *Roberts* included in the RFC a mental limitation based on the plaintiff's anxiety and depression, restricting the plaintiff to understanding, remembering, and carrying out "detailed, but not complex, tasks and instructions." *Id.* at *3. The plaintiff in *Roberts* similarly argued that the ALJ's finding of "a severe mental impairment means that as a matter of law the claimant's ability to perform basic work activities is significantly limited," and therefore that the ALJ's RFC determination contradicted that finding because it "contain[ed] no limitations whatsoever on [the plaintiff's] ability to perform the basic work activity of understanding, carrying out and remembering simple instructions." *Id.* at *3.

The court rejected the plaintiff's argument.[1] As it explained, the paragraph B findings at step 3 and do not directly correlate to the RFC. 2025 WL 1268116, at *3. Despite the plaintiff's argument, the court concluded that there was "no authority that a finding of a severe limitation at step two must correspond to an RFC finding that specifically limits understanding, carrying out, and remembering simple instruction." *Id.* at *4 (citation modified). To the contrary, the court held that the SSA regulations "do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into the RFC

---

[1] The plaintiff in *Roberts* was represented by the same counsel who represents Plaintiff in this case. 2025 WL 1268116, at *1. *See also Suzan R. v. O'Malley*, No. EP-23-CV-00288-KC-RFC, 2024 WL 3169606 (W.D. Tex. June 20, 2024) (rejecting similar argument presented by same counsel); *Hernandez v. Bisignano*, No. SA-24-CV-458-OLG (HJB), 2025 WL 2217481 (W.D. Tex. July 14, 2025) (same), *report and recommendation adopted*, 2025 WL 2212080, (July 31, 2025).

determination." *Id. (*quoting *Patterson v. Astrue*, No. 1:08-CV-109-C ECF, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009)).

The facts in *Roberts* are virtually indistinguishable from those here.  As in that case, the ALJ here found moderate deficits in concentration, persistence, and pace, and incorporated that finding into the RFC by limiting Plaintiff to "carry[ing] out detailed but not complex instructions." (Tr. 19, 20.)  As the *Roberts* court noted, "[s]imilar findings have been upheld in numerous other courts." 2025 WL 1268116, at *5 (collecting cases).  Accordingly, Plaintiff is mistaken in arguing that the ALJ's findings are necessarily inconsistent and require remand.  (*See* Docket Entry 10, at 7.)[2]

The ALJ's mental RFC limitations are supported by substantial evidence.  In her decision, the ALJ considered Plaintiff's self-reported limitations and Plaintiff's testimony, numerous treatment records, administrative findings at an initial and a reconsideration level, and consultative psychological examinations.  (Tr. 21–24.)  The ALJ evaluated this evidence carefully—adopting administrative findings and medical opinions she found consistent with, and supported by, the treatment record and Plaintiff's reported symptoms.  (*Id.*)  At the conclusion of her evaluation, the ALJ found that that evidence showed "moderate limitations in concentrating, persisting, and

---

[2] In a notice of supplemental authority, Plaintiff submitted a recent Colorado case in support of her position: *K.L.J. v. Comm'r, Soc, Sec. Admin.*, No. 24-cv-30605, 2025 WL 3170490 (D. Colo. Nov. 7, 2025). *K.L.J.* is distinguishable. There, the claimant was found to have moderate limitations in all four areas of mental functioning. *Id.* at *1. Although the ALJ provided some mental limitations to the RFC, the district court found that the ALJ neither explained "what specific functional capacities Plaintiff's moderate mental limitations affected, nor how limiting her to unskilled work would account for them." *Id*. at *4 (brackets and citation omitted). Here, the ALJ found moderate limitations in only one area of mental functioning: concentrating, persisting, and maintaining pace. (Tr. 19.) And as the ALJ explained in her decision, the RFC accounted for this limitation by limiting Plaintiff to understanding, remembering, and carrying out detailed but not complex instructions, and to attending and concentrating for extended periods only up to two-hour intervals. (*See* Tr. 24 (expressly connecting Plaintiff's moderate limitation to mental-functioning limitations in her RFC).)

maintaining pace associated with depression and anxiety, and that these conditions limited Plaintiff "to understanding, remembering, and carrying out detailed, but not complex, instructions." (Tr. 24.)  In making these findings, the ALJ complied with the requirement that the mental RFC assessment include more detail than the paragraph B assessment at steps two and three.  Indeed, the ALJ expressly acknowledged those more detailed RFC requirements. (*See* Tr. 19.)  Under the circumstances, Plaintiff has failed to show an erroneous inconsistency in the ALJ's determinations, let alone one requiring remand.

B.  ***Whether the ALJ Failed to Explain Adequately the Omission of Mental Limitations from the RFC Based on Persuasive Opinion Evidence.***

Plaintiff next challenges the ALJ's consideration of the medical opinions of two Agency consultative examiners, Theodore Weber, Psy.D, and Renee McPherson Watson, Ph.D.  (Docket Entry 10, at 7-11.)  Plaintiff appears to make two arguments in support of this challenge: (1) that, although the ALJ found these examiners' opinions persuasive, she mischaracterized the opinions in determining Plaintiff's RFC; and (2) that she erroneously failed to resolve internal contradictions in the examiners' opinions. (*Id*.)  Each argument is considered below.

1.  *The ALJ's characterization of the examiners' opinions.*

Plaintiff first argues that the ALJ mischaracterized the opinions of the consultative examiners when she stated that the consultants "found the claimant could perform semi-skilled work." (Tr. 24; *see* Docket Entry 10, at 9.)  Plaintiff points out that, based on Dr. Weber's report, the disability examiner found that Plaintiff's mental impairments limited her to unskilled work. (*See* Tr. 66.)  A different examiner reached the same conclusion after reviewing Dr. Watson's report. (*See* Tr. 77.)

Even assuming that the ALJ erred by mischaracterizing these reports in determining Plaintiff's RFC, any such error was harmless in light of the rest of the ALJ's findings.  An error is

harmless unless there is reason to think that remand might lead to a different result. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). In other words, "[h]armless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel,*, 986 F.3d at 556. In this case, the ALJ found at step five that Plaintiff could perform three jobs in the national economy—all three were categorized as unskilled work. (Tr. 25.) Under these circumstances, any mischaracterization of the consultative examinations as indicating that Plaintiff could perform semi-skilled work had no effect on the ultimate determination of disability. Plaintiff therefore fails to meet her burden as to prejudice. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

### 2. *The ALJ's failure to resolve inconsistencies.*

Plaintiff also contends that the ALJ accepted the opinions of Drs. Weber and Watson without resolving internal inconsistencies within those opinions. (Docket Entry 10, at 9–11.) Dr. Weber's report seems to suggest that Plaintiff "may can [sic] not carry out detailed instructions" but also that she could, at most, "understand, remember and carry out detailed but not complex instructions." (Tr. 65.) Dr. Watson's report does not include a similarly apparent inconsistency, but Plaintiff suggests that her finding that Plaintiff had moderate limitations in concentration, persistence, and pace conflicted with her conclusion that she could "attend and concentrate for extended periods of time." (Tr. 75–76.) Dr. Watson further concluded that Plaintiff could carry out detailed instructions, without a limitation as to their complexity. (Tr. 76.)

As with the previous claimed error, the Court should find that any failure to resolve possible inconsistencies in these reports would be harmless, in light of the requirements set out in the DOT. The three jobs that the ALJ found Plaintiff capable of performing—routing clerk, usher, and sales

attendant—required reasoning levels of two or three.  *See* DOT 222.687-022 (requiring reasoning at level two); DOT 344.677-014 (same); DOT 299.677-010 (requiring reasoning level three).  At level two, an employee is required to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," and to "[d]eal with problems involving a few concrete variables in or from standardized situations."  DOT, App. C.  At level three, an employee must be able to "carry out instructions furnished in written, oral, or diagrammatic form," and "[d]eal with problems involving several concrete variables in or from standardized situations."  *Id.*  Plaintiff fails to show that, even if the alleged inconsistencies in the examiners' opinions were resolved, she would not be able to meet at least level two reasoning.  And as the ALJ found, this would still mean that there were at least 34,000 jobs in the national economy that she could perform.  *See Bryant v. Kijakazi*, No. 6:22-CV-01098-ADA-JCM, 2023 WL 12008469, at *5 (W.D. Tex. Sept. 11, 2023) ("[A] singular occupation with 25,000 jobs in the national economy suffices for a significant range of work Plaintiff can perform.").  In short, Plaintiff has failed to show any prejudice resulting from the claimed error.

### C.  *Whether the ALJ Relied on Her Lay Judgment to Assess Plaintiff's Shoulder Impairment.*

Finally, Plaintiff contends that the ALJ erred in determining how much reaching Plaintiff could do.  In making her RFC determination, the ALJ limited Plaintiff's "right dominant upper extremity reaching," finding that, while she could be required to do frequent "reaching in front and laterally," she could reach overhead only occasionally.  (Tr. 20. )  Plaintiff suggests that in making this determination, the ALJ relied on her own lay judgment instead of the medical opinions in the record.  (Docket Entry 10, at 12–15.)  This argument fails.

Regarding Plaintiff's reaching limitation, the ALJ found "generally persuasive" the state agency medical consultants' determinations that she "could perform a range of light work with

occasional reaching with the right upper extremity.  (Tr. 23.)  The ALJ noted however, the somewhat inconsistent medical evidence in the record, which showed "no joint tenderness of the right upper extremity, but reduced range of motion, normal sensory examination, but positive Tinel's sign on the right, normal deep tendon reflexes of the right upper extremity with 5/5 strength, normal ability to handle small objects, normal ability to button buttons on clothing, no atrophy, no fasciculations, and no rigidity."  (Tr. 24.)  The medical evidence supporting these objective findings is extensively detailed in the ALJ's determination.  (*See* Tr. 20–23.)  As the ALJ found, this evidence could support frequent, rather than occasional, reaching in "all directions." (Tr. 24.)  Nevertheless, she limited Plaintiff's overhead reaching in the RFC to account for the medical evidence of her right shoulder impingement.  (*Id.*)

As the Commissioner argues, it is the ALJ rather than Court that is tasked with weighing the medical evidence.  (Tr. 13, at 11 (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).) Plaintiff fails to show how the ALJ's finding of some limitation in overhead reaching based on that evidence was error, let alone prejudicial error.

## V.    Conclusion and Recommendation.

Based on the foregoing, I recommend that the Commissioner's decision denying Plaintiff's application for DIB be **AFFIRMED**.

## VI.    Instruction for Service and Notice of Right to Object.

The Clerk of the Court shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user," or (2) by mailing a copy to those not so registered by certified mail, return receipt requested. The parties must file written objections, if any, to this Report and Recommendation **within 14**

14

**days** after being served with a copy of the same, unless this time period is modified by the District Court.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.  An objecting party must specifically identify those findings, conclusions, or recommendations to which their objections are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered." *Williams v. Lakeview Loan Serv. LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on December 19, 2025.

Henry J. Bemporad
United States Magistrate Judge

15